# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

D'JANGO HENDRIX,

               Petitioner,              :     Case No. 1:17-cv-623

    - vs -                            District Judge Douglas R. Cole
                                      Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
 Institution,

                                  :

               Respondent.

---

## DECISION AND ORDER

---

This habeas corpus action is before the Court on Petitioner's Emergency Motion for Extension of Time and to Set Deadline for Filing of Motions filed January 26, 2023(ECF No. 65). The Motion shows that Petitioner has seen the Magistrate Judge's Report of January 25, 2023, recommending denial of his Emergency Motion to enjoin his transfer to another institution, a transfer now scheduled for January 27, 2023, because the snowfall catastrophe predicted by news sources for January 25, 2023, did not happen.

What the Court did not know before but is told with the instant filing is that draft motions stored on the computer server at Lebanon Correctional have been destroyed and would not have been downloaded to a flash drive in any event because of "ODRC Policy and Security concerns." What those concerns are has not been explained. The Court accepts the destruction of those files as a given. Petitioner will need time to re-type his traverse. Why it will take sixty days to do so is also unexplained, but the institutional librarian, Mrs. P. Wood, supports Hendrix's request.

1

Respondent's counsel is requested to verify the authenticity of her letter and signature, as it was acquired on apparently very short notice.

This case was filed September 15, 2017, more than five years ago (ECF No. 1). Since then Petitioner has been granted extensions of time to file his reply of ninety days (ECF No. 9), sixty days (ECF No. 10), thirty-five days (ECF No. 11), forty-three days (ECF No. 13), fifty-five days (ECF No. 26), fourteen days (ECF No. 29), thirty-eight days (ECF No. 30), forty-two days (ECF No. 34), and forty-nine days (ECF No. 54). That is well more than a year's worth of extensions to file the traverse. Having had more than five years to litigate this case, Petitioner now asks for a schedule for additional extensive motion practice.

Fifty years ago, Justice Harlan wrote eloquently on the important of finality in criminal litigation:

> More importantly, there are operative competing policies in this area which I regard as substantial. It is, I believe, a matter of fundamental import that there be a visible end to the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view. See, e. g., *Fay v. Noia,* 372 U.S., at 445 (Clark, J., dissenting); *Spencer v. Texas,* 385 U.S. 554, 583 (1967) (Warren, C. J., concurring and dissenting). See also Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441 (1963); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 146-151 (1970). As I have stated before, "Both the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community." *Sanders v. United States,* 373 U.S., at 24-25 (HARLAN, J., dissenting). At some point, the criminal process, if it is to function at all, must turn its attention from whether a man ought properly to be incarcerated to how he is to be treated once convicted. If law, criminal or otherwise, is worth having and enforcing, it must at some time provide a definitive answer to the questions litigants present or else it never provides an answer at all. Surely it is an unpleasant task to strip a man of his freedom and subject him to institutional

> restraints. But this does not mean that in so doing, we should always be halting or tentative. No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.
>
> A rule of law that fails to take account of these finality interests would do more than subvert the criminal process itself. It would also seriously distort the very limited resources society has allocated to the criminal process. While men languish in jail, not uncommonly for over a year, awaiting a first trial on their guilt or innocence, it is not easy to justify expending substantial quantities of the time and energies of judges, prosecutors, and defense lawyers litigating the validity under present law of criminal convictions that were perfectly free from error when made final. See Friendly, supra, at 148-149. This drain on society's resources is compounded by the fact that issuance of the habeas writ compels a State that wishes to continue enforcing its laws against the successful petitioner to relitigate facts buried in the remote past through presentation of witnesses whose memories of the relevant events often have dimmed. This very act of trying stale facts may well, ironically, produce a second trial no more reliable as a matter of getting at the truth than the first. See Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. Pa. L. Rev. 378, 384 (1964).

*Mackey v. United States*, 401 U.S. 667, 690-91 (1971)(Harlan, concurring in the judgment in part).

Since he wrote, important work has been done on the fallibility of eyewitness testimony, even when it is given within hours or days of observation. See Eyewitness Testimony by Elizabeth F. Loftus. We have also become aware that memory is not like a video recording, but involves mental reconstruction of events.

Because this Court takes seriously the State's interest in the finality of criminal decisions, it is obliged to insist on diligence by litigants. The public in general has an interest in the prompt disposition of litigation, an interest expressed in judges' obligation to publicly report civil cases pending more than three years.

Acknowledging Petitioner's need to re-type his traverse, his time for filing that document

is extended to and including April 1, 2023.  **No further extensions of time to file a traverse will be granted**.  Motions to extend time are non-dispositive pre-trial motions which Magistrate Judges are empowered to decide with litigants retaining the right to object which parallels their right to object to reports and recommendations on dispositive motions.  Petitioner is aware of this right, having exercised it the last time the undersigned denied in part a request for extension (ECF No. 60).  Petitioner should be aware of the provisions of S. D. Ohio Civ. R. 72.3 which provides:

> **Effect of Magistrate Judge Ruling Pending Appeal to a District Judge**
>
> When an objection is filed to a Magistrate Judge's ruling on a non-case dispositive motion, the ruling remains in full force and effect unless and until it is (1) stayed by the Magistrate Judge or a District Judge, or (2) overruled by a District Judge.

The effect of this Rule is that a litigant cannot give himself or herself a "bootstrap" extension of time by objecting to a denial of an extension.

The Court declines to set deadlines for the other motions Petitioner proposes to file, but will consider Petitioner's diligence or lack thereof in deciding any additional motions filed in the case.

January 27, 2023.

s/ *Michael R. Merz*
United States Magistrate Judge