# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

D'JANGO HENDRIX,

                Petitioner,          :     Case No. 1:17-cv-623

     - vs -                          District Judge Douglas R. Cole
                                      Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
 Institution,

                             :

             Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court for decision on the merits. Hendrix filed the Petition by placing it in the prison mailing system on September 14, 2017 (ECF No. 1). On the Court's Order, Respondent filed the State Court Record (ECF No. 7) and a Return of Writ (ECF No. 8) on September 19, 2018. On August 28, 2020, Respondent filed an expanded State Court Record (ECF No. 24) reflecting Petitioner's exhaustion of additional state court remedies and an Amended Return (ECF No. 25). On August 31, 2021, the Court again stayed the case pending completion of state court proceedings (ECF No. 37). When the stay was dissolved, the Court required supplementation of the State Court Record and allowed an amended Return of Writ (Order, ECF No. 40). Respondent complied October 5, 2022 (ECF No. 51, 52). Since then the Court has granted a number of extensions of time for filing a traverse, the last of which expired

1

April 7, 2023 (ECF No. 72).  Hendrix did not meet that deadline, but did file his Traverse on April 17, 2023 (ECF No. 79).

Because the Court had been quite definite about the April 7, 2023, deadline and Hendrix had repeatedly indicated his ability to meet it, but did not, the Court ordered him to show cause why the Traverse should not be stricken (ECF No. 80).  His attempt to do so (ECF Nos. 82) is unpersuasive.  He relates that he went to the office of the school principal at the prison at "8:00 a.m. that morning," he printed the Traverse, and he went directly to the mail room to mail it.  8:00 what morning?  April 7, 2023?  If that is the date of deposit in the mail, why is there a postmark of April 13 (Traverse, ECF No. 79, PageID 2300)?

The Court has nonetheless decided to consider the Traverse to respect the priority placed by the federal courts on decision on the merits when possible.  It appears Petitioner made a good faith effort to file by April 7, 2023, complicated by prison library illness.  There is also no prejudice to Respondent from this additional ten days.[1]

**Litigation History**

On January 24, 2014, the Hamilton County Grand Jury indicted Hendrix on four counts of Attempted Murder (Ohio Revised Code § 2903.02(A)/2923.02(A)), each of which contained two firearm specifications (Counts 1-4); four counts of Felonious Assault (Ohio Revised Code § 2903.11(A)(2)) (Counts 5-8); and two counts of Having Weapons While Under Disability (Ohio

---

[1] The prejudice to the State from the long delay since trial is a distinct matter.

Revised Code § 2923.13(A)(2) and (3)) (Counts 9-10). (Indictment, State Court Record, ECF No. 7, Exhibit 1).

The trial jury found Hendrix guilty on all charges. After merger, the trial court sentenced him to an aggregate term of imprisonment of fifty-three years. Represented by new counsel, he appealed to the First District Court of Appeals which affirmed. *State v. Hendrix*, 2016-Ohio-2697 (Ohio App. 1st Dist. Apr. 27, 2016)(copy at State Court Record, ECF No. 7, Ex. 13). Still represented by counsel, Hendrix appealed to the Supreme Court of Ohio which declined to exercise jurisdiction. *State v. Hendrix*, 146 Ohio St.3d 1504 (2016).

On July 27, 2016, through new counsel Hendrix filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (Petition, State Court Record, ECF No. 7, Ex. 18). He claimed ineffective assistance of trial counsel where his trial attorney "failed to procure and present expert forensic testimony respecting guns and ammunition, gun fire, locations of the gunfire, wounds and bullet trajectories to support his trial defense [of self-defense] and to undermine the State's theories in support of prosecution." *Id.* at PageID 217. The trial court found that the Petition was barred by *res judicata* and, alternatively, that the presented expert report did not support relief and was not credible. The First District affirmed (Opinion, State Court Record, ECF No. 24, Ex. 28) and ultimately denied reconsideration, *Id.* at Ex. 34. The Supreme Court declined to exercise jurisdiction. *Id.* at Ex. 38.

Hendrix filed a second post-conviction petition under Ohio Revised Code § 2953.21 claiming ineffective assistance of trial counsel in failure to use medical evidence to prove self-defense. *Id.* at Ex. 39. The State moved successfully to dismiss the petition as time-barred and successive. *Id.* at Ex. 40, 42. The First District affirmed (Opinion, State Court Record, ECF No. 51, Ex. 67). Hendrix did not appeal to the Supreme Court of Ohio.

**Petitioner's Grounds for Relief**

In the Petition, Hendrix pleads the following Grounds for Relief:

**Ground One**: The Trial court abused its discretion in making several improper evidentiary rulings.

**Supporting facts:** [(a)][2] The trial court improperly allowed the State to impeach Hendrix's credibility with his prior convictions, including two convictions to which he had already stipulated, and [(b)] improperly refused to allow Hendrix to present evidence regarding the trajectory the bullet with which he was shot took through his body.

**Ground Two**: The trial court's denial of Hendrix's *Batson* challenge to the State's use of a peremptory challenge against a prospective female African-American juror was clearly erroneous.

**Supporting Facts:** The State used a peremptory challenge in a discriminatory fashion to strike a female African-American juror and gave race-neutral reasons for doing so, but those reasons had a discriminatory intent.

**Ground Three**: Hendrix was denied the effective assistance of counsel.

**Supporting Facts:** Hendrix's trial counsel was ineffective for allowing for unrecorded sidebars to be summarized by the trial court; for failing to use a peremptory challenge on a biased juror who counsel tried to strike for cause; for failing to make an opening argument even after deferring opening argument; and for failing to present medical and ballistic and forensic witnesses.

**Ground Four**: The jury erred in finding Hendrix guilty of attempted murder and felonious assault against Kevin Tye and Christopher White where those convictions were based on insufficient evidence.

**Supporting facts**: The State failed to present any evidence whatsoever that Hendrix fired a gun toward Kevin Tye or Christopher White.

---

[2] These designations of parts of Ground One do not appear in the Petition, but Hendrix has withdrawn that portion of Ground One labeled (b) above.

4

**Ground Five**: Hendrix's convictions for attempted murder and felonious assault were contrary to law.

**Supporting facts**: The manifest weight and sufficiency of the evidence shows that Hendrix acted in self-defense.

**Ground Six**: Hendrix was denied a fair trial because of the cumulative effect of the errors at trial.

**Supporting facts**:  Even if the court did each error in Hendrix's trial did not individually warrant reversal of his convictions, the cumulative effect of those errors does warrant reversal.

**Ground Seven**: Hendrix's maximum, consecutive sentences were contrary to law.

**Supporting facts**: The trial court erred in failing to consider the seriousness of crime and recidivism factors under §R.C. 2929.12 when it sentenced Hendrix to maximum consecutive sentences for four attempted murder convictions with specifications and his having weapons under disability conviction

(Petition, ECF No. 1).

In his Traverse, Hendrix waives the following Grounds for Relief

**GROUND ONE**: The trial court abused its discretion in making several improper evidentiary rulings.

**Supporting Facts**: (b)The trial court improperly refused to allow Hendrix to present closing arguments regarding the trajectory the bullet with which he was shot too through his body.

**GROUND THREE:** Hendrix was denied the effective assistance of counsel.

**Supporting Facts:** (a) Hendrix trial counsel was ineffective for allowing for unrecorded sidebars to be summarized by the trial court, (c) for failing to make an opening statement.

**GROUND FIVE**: Hendrix's convictions for attempted murder and felonious assault were contrary to law.

5

> **Supporting Facts:** The manifest weight and sufficiency of the evidence show that Hendrix acted in self-defense.
>
> **GROUND SIX:** Hendrix was denied a fair trial because the cumulative effect of the errors at trial.
>
> **Supporting Facts:** Even if the court did error in Hendrix's trial individually warrant reversal of his convictions, the cumulative effect of those errors does warrant reversal.
>
> **GROUND SEVEN:** Hendrix's maximum, consecutive sentences were contrary to law.
>
> **Supporting Facts:** The trial court erred in failing to consider the seriousness of crime and recidivism factors under §R.C. 2929.12 when it sentenced Hendrix to maximum consecutive sentences for four attempted murder convictions with specifications and having weapons under disability conviction.

(ECF No. 79, PageID 2269).

This withdrawal leaves for decision:

**Ground One (a),** the claim the trial court improperly allowed impeachment of Hendrix with his prior felony convictions;

**Ground Two,** the claim under *Batson v. Kentucky*, 476 U.S. 79 (1986);

**Ground Three** ineffective assistance of trial counsel for (b) failing to use a peremptory challenge on a biased juror who counsel tried to strike for cause and (d) failure to present medical and ballistic and forensic witnesses.

**Ground Four**: The jury erred in finding Hendrix guilty of attempted murder and felonious assault against Kevin Tye and Christopher White where those convictions were based on insufficient evidence.

6

# Analysis

### Ground One:  Improper Impeachment with Prior Convictions

In his Ground for Relief 1(a), Hendrix claims the trial court improperly allowed him to be cross-examined about his prior felony convictions even after he had stipulated to the prior convictions underlying the weapons under disability counts of the indictment.

Hendrix raised this claim on direct appeal and the First District decided it as follows:

> {¶ 15} Hendrix testified in his own defense. According to Hendrix, on the night of the shooting, he joined the others at Dillon's bonfire. The whole time Hendrix was there, Worley kept his hand in his pocket. At some point, Hendrix felt that Worley had snuck up on him, and a cursing argument ensued. The men pushed Hendrix, causing his glasses to fall off. Hendrix then left the bonfire, and returned home. After about ten minutes, Hendrix got ready to leave his house again, intending to get in his truck and drive to meet his friends at a bowling alley. Hendrix started walking down the top of his driveway when he was shot. Hendrix then fired back three or four shots. Hendrix testified that he had initially denied having a gun that night to the police, because the gun belonged to his wife, who had been out of town at the time of the shooting, and he had wanted to protect her. When asked why he had grabbed a gun out of the dresser before leaving his house, Hendrix stated that he had been "jumped" before, that "the attitude was a little bit aggressive * * * when I left there," and that Worley had not taken his hand out of his pocket.
>
> ● * *
>
> {¶ 18} In his first assignment of error, Hendrix argues that the trial court abused its discretion by making several improper evidentiary rulings.
>
> {¶ 19} First, Hendrix argues that the trial court erred in allowing the state to impeach Hendrix's credibility with his prior convictions. Hendrix had stipulated to certain prior convictions for purposes of

7

the weapons-under-disability counts, and the state impeached Hendrix with evidence of convictions unrelated to those charges.

{¶ 20} When cross-examining Hendrix, the prosecutor questioned Hendrix regarding felony convictions he had sustained within the past ten years. The defense attorney objected, and the parties and the court had an unreported sidebar conference. The prosecutor then questioned Hendrix briefly regarding the following prior convictions: trafficking in cocaine, burglary, weapons under disability, harassment by inmate, illegal possession of a firearm in a liquor-permit establishment, intimidation, and discharge of a firearm near a premises. Although Hendrix objected to the introduction of the evidence, we do not know the basis of the objection from the record. Therefore, we review this argument for plain error. *See State v. Lewis,* 1st Dist. Hamilton Nos. C–050989 and C–060010, 2007–Ohio–1485, ¶ 39.

{¶ 21} Hendrix argues that the admission of his prior convictions was unduly prejudicial under Evid.R. 403(A), relying on *State v. Creech,* 2014–Ohio–4004, 18, 18 N.E.3d 523 N.E.3d 523 (7th Dist.). In *Creech,* the court held that the trial court had erred in failing to accept a defendant's stipulation that he was under a disability for the purposes of proving a weapons-under-disability charge, relying on Fed.R.Evid. 403 and *Old Chief v. U.S.,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The *Creech* court noted that the prior crimes were "not admissible for any other reason than to show his status as disabled." *Id.* at ¶ 11. In this case, Hendrix testified, and thus the prosecutor could impeach him as a witness with his prior convictions under Evid.R. 609. *See* Evid.R. 609(A)(2) ( "[n]otwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."). Therefore, we find *Creech* distinguishable from the case at bar.

{¶ 22} When a prosecutor uses prior convictions to impeach a witness's general credibility, Evid.R. 609 allows the prosecutor to question the witness regarding the name of the crime, the place of conviction, and the punishment. *See State v. Amburgey,* 33 Ohio St.3d 115, 117, 515 N.E.2d 925 (1987). The prosecutor in this case did just that, thus, on this record, Hendrix has not shown that the

8

> admission of his prior convictions constituted plain error. *See Lewis* at ¶ 39.

*State v. Hendrix*, 2016-Ohio-2697 (Ohio App. 1st Dist. Apr. 27, 2016)(Fischer, J.).

Respondent opposes this claim on the ground it does not state a claim cognizable in federal habeas corpus because it does not assert a violation of the United States Constitution (Return, ECF No. 25, PageID 1562).

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Hendrix's Ground One as pleaded does not state a claim for relief cognizable in habeas corpus. He alleges the trial court abused its discretion in permitting impeachment with the prior convictions, but abuse of discretion is not cognizable in habeas corpus. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Giving Hendrix the benefit of the doubt as a *pro se* litigant, the Court will assume he intended to assert that admission of the prior convictions violated the Constitution and that the First District decided that question on the merits[3]. To prevail on that claim, Hendrix must show

---

[3] However, the First District also held that Hendrix had not specified the ground for has objection and he thereby forfeited any claim except for plain error. Reviewing for plain error, they found none. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default, in this case failure to make a specific

the First District's decision is contrary to or an objectively unreasonable application of clearly established Supreme Court constitutional precedent. 28 U.S.C. § 2254(d)(1). That he has not done.

*Old Chief v. United States*, 519 U.S. 172 (1997), on which he relies, is not a constitutional holding. Instead, the Supreme Court held in that case it was an abuse of discretion in administering Fed. R. Evid. 403 to refuse a stipulation to a conviction necessary to prove as an element in the pending case because of the risk of prejudice. Of course, the Federal Rules of Evidence do not apply in state criminal trials.

The more important distinction that Hendrix's argument misses is between the situation where a defendant does not take the stand and where he or she does. When a defendant or indeed any witness takes the stand, they put their general credibility in issue. Cross-examination about prior felony convictions less than ten years old, clearly permitted by Ohio R. Evid. 609, is well understood as likely to undermine a witness's credibility with a jury, which is a major reason why most defendants do not take the stand. Of course, that may not be possible in a case where the defense is self-defense. In any event, Hendrix has cited no Supreme Court precedent and none is known to the Magistrate Judge questioning the constitutionality of cross-examining a testifying defendant about prior felony convictions as is permitted by Ohio R. Evid. 609. Ground One should therefore be dismissed.

---

contemporaneous objection. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

**Ground Two:  Challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).**

Hendrix claims the trial court violated his constitutional rights by seating a juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  That decision prohibits under the Equal Protection Clause race-based peremptory challenges by a prosecutor.  A state criminal defendant can establish a *prima facie* case of purposeful racial discrimination in the selection of jurors solely by proof of peremptory challenges to exclude members of the defendant's race.

A trial court must use a three-step process to evaluate a *Batson* claim.  First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race.  The burden then shifts to the proponent to articulate a race-neutral reason for the challenge.  Finally, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination.  *Purkett v. Elem,* 514 U.S. 765 (1995); *Hernandez v. New York*, 500 U.S. 352 (1991).  To make a *prima facie* showing, a defendant must show that he is a member of a cognizable racial group, that a challenge has been exercised to remove a venireperson of the same race, and any additional facts and circumstances from which an inference could be drawn that the prosecutor had used the peremptory challenge in a race-based manner. *Batson,* 476 U.S. at 79.  The defendant is entitled to rely on the fact that the peremptory challenge process is one in which those who are of a mind to discriminate on the basis of race are able to do so.  *Id*.  A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous.  *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990)    The fact that the evidence would have supported a challenge for cause is sufficient to demonstrate that it is race-neutral.  *Batson*,

479 U.S. at 97. A *Batson* error is never harmless, but rather is a structural error. *United States v. McFerron,* 163 F.3d 952 (6th Cir. 1998), relying on *Arizona v. Fulminante,* 499 U.S. 279 (1991). A State may not require a prosecutor to meet a more likely than not burden at the prima facie stage. *Johnson v. California,* 545 U.S. 162 (2005).

> Analysis of a claim of discrimination in the prosecutor's exercise of peremptory challenges in juror selection follows the three-part framework established in *Batson:* (1) the defendant must make a prima facie showing of discrimination; (2) the burden then shifts to the prosecution to provide a race-neutral explanation for the challenge; and (3) the defendant then has the opportunity to rebut the proffered race-neutral reason as pretext, and the trial court determines whether the defendant has established purposeful discrimination. 476 U.S. at 93-98; *accord Braxton [v. Gansheimer]*, 561 F.3d [453] at 458-59 [(6th Cir. 2009). The defendant "always bears the ultimate burden of persuasion. *Braxton*, 561 F.3d at 459."

*Akins v. Easterling,* 648 F.3d 380, 387 (6th Cir. 2011).

Hendrix presented his *Batson* claim to the First District Court of Appeals as his second assignment of error and the court decided it as follows:

> {¶ 26} In his second assignment of error, Hendrix argues that the trial court erred in overruling his objection to the state's use of a peremptory challenge to remove an African–American juror under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

> {¶ 27} *Batson* prohibits the exercise of a peremptory strike against a prospective juror solely on the basis of that juror's race, consistent with the Equal Protection Clause. *State v. Robinson,* 1st Dist. Hamilton No. C–140043, 2015–Ohio–773, ¶ 11. Once a *Batson* challenger has made a prima facie showing of discrimination, the party moving for a peremptory strike must give a race-neutral explanation for the strike. *State v. Williams,* 1st Dist. Hamilton No. C–130277, 2014–Ohio–1526, ¶ 36–37, citing *State v. Herring,* 94 Ohio St.3d 246, 255–256, 762 N.E.2d 940 (2002). The trial court must then determine whether purposeful discrimination occurred. *Williams,* citing *Herring* at 256, 762 N.E.2d 940. A court will not reverse a trial court's finding under *Batson* unless that finding is "

'clearly erroneous.' " *Williams,* quoting *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

{¶ 28} Defense counsel objected to the state's use of a peremptory challenge to remove an African–American juror—Prospective Juror No. 1—under *Batson.* Defense counsel argued that the prospective juror had indicated during voir dire that she believed police officers were "here to protect and serve." The state responded that it had used the peremptory challenge because of the prospective juror's "criminal background as well as civil lawsuits that she was involved with and also that * * * she was too eager to serve."

{¶ 29} According to the transcript of voir dire, Prospective Juror No. 1 stated that her husband had been charged with telephone harassment based upon a complaint from a past girlfriend. Springfield Township police had investigated the complaint, and the charge had occurred while the prospective juror and her husband were married. The prospective juror also stated that she or a family member had been involved in a civil case, although the juror indicated that nothing about that civil matter had caused her any concern or had affected her view of the court system.

{¶ 30} Although the record is unclear as to what the prosecutor meant when commenting on the prospective juror's willingness to serve, the Springfield Township police department had investigated a criminal complaint against her husband—the same department involved in this case. This connection alone is a legitimate, race-neutral explanation for the peremptory strike. Thus, the trial court's finding that the state did not purposefully discriminate against the prospective juror is not clearly erroneous. *See Robinson* at ¶ 13; *Williams* at ¶ 36. We overrule Hendrix's second assignment of error.

*State v. Hendrix*, 2016 -Ohio- 2697 (Ohio App. 1ˢᵗ Dist. Apr. 27, 2016). The First District thus

decided Hendrix's *Batson* claim on the merits. To prevail on this claim, Hendrix must show the

First District's decision was contrary to or an objectively unreasonable application of *Batson* or

that it is based on a clearly erroneous determination of the facts. 28 U.S.C. § 2254(d)(1) and (2).

Hendrix argues this claim in his Traverse as if the decision to be reviewed were that of the

trial court, but a habeas court must review the last reasoned decision of the state courts on the issue

involved. For each claim adjudicated on the merits in the state courts, the decision the federal courts review is that of "the last state court to issue a reasoned opinion on the issue." *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006), *citing Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005); *see also, e.g., Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("[A] federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue."); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) ("This court . . . must look to the last reasoned decision of the state court as the basis of the state court's judgment."); *Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000) ("When the last state adjudication of the claim is silent or ambiguous, the federal court should look through to the last clear state decision on the matter." (internal quotation marks omitted)), cert. dismissed, 531 U.S. 1134 (2001). It is therefore the First District's decision which must be reviewed.

When asked for reasons for exercising the peremptory challenge, the prosecutor referred to that fact that the prospective juror's husband had been investigated for telephone harassment of a past girlfriend by the Springfield Township Police Department, the same entity involved in prosecuting this case. *Hendrix, supra* at ¶ 30. "This connection alone is a legitimate, race-neutral explanation for the peremptory strike. Thus, the trial court's finding that the state did not purposefully discriminate against the prospective juror is not clearly erroneous." *Id.*

Instead of offering any analysis of why that holding is clearly in error, Hendrix merely labels the prosecutor's reasons as "clearly pretextual." Labels are not analysis. Hendrix has not shown from evidence of record why the prosecutor's reason is pretextual and thus has failed to meet his burden of persuasion. Ground Two is without merit.

**Ground Three (b):  Ineffective Assistance of Trial Counsel:  Failure to Excuse Biased Juror**

In Ground Three (b), Hendrix claims he received ineffective assistance of trial counsel when his trial attorney failed to use a peremptory challenge to excuse a biased juror.

Hendrix raised this claim on direct appeal and the First District decided it as follows:

> [*P36] **Failure to use a peremptory challenge.** Hendrix contends that his counsel erred by failing to use a peremptory challenge against Prospective Juror No. 12. During voir dire, Prospective Juror No. 12 stated that she would be persuaded by four people who told the same story versus one person who told a different story. Defense counsel asked the trial court to remove Prospective Juror No. 12 for cause. The trial court then questioned the juror regarding her statement, and she clarified that she would weigh each witness's testimony independently. Prospective Juror No. 12 was then seated as a juror.
>
> [*P37] The Ohio Supreme Court has opined regarding the reluctance of a reviewing court to second-guess counsel's decisions regarding voir dire. See *State v. Mundt,* 115 Ohio St.3d 22, 2007-Ohio-4836, P 63, 873 N.E.2d 828. Although defense counsel had not yet used any peremptory challenges, defense counsel may have found it unnecessary to use a peremptory challenge against Prospective Juror No. 12 after the trial court's further questioning of her. The prospective juror's clarifying statement showed that she would independently weigh each person's testimony, and that she would not reach a result merely on quantity of evidence. Thus, defense counsel could have made the strategic decision at that point to keep the prospective juror, who would be open to believing his client's story versus the story of the four victims. Hendrix has not shown his counsel was ineffective for failing to use a peremptory challenge.

*State v. Hendrix, supra*.

The First District thus decided on the merits Hendrix's ineffective assistance of trial counsel claim for failure to use a peremptory challenge.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer

15

to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The

17

likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

Because the First District's decision is the last reasoned state court decision on this juror issue, in order to prevail Hendrix must show that that decision was contrary to or an objectively unreasonable application of *Strickland* or that it was based on an unreasonable determination of the facts, based on the evidence before the state courts. 28 U.S.C. § 2254(d)(1) and (2).

Hendrix acknowledges that in order to prevail, he must show that Prospective Juror No. 12 was actually biased (Traverse, ECF No. 79, PageID 2285, citing *State v. Mundt,* 115 Ohio St.3d 22 (2007)). *Mundt* supports that proposition and cites federal case law to the same effect. *Id.* at ¶ 67, citing *Miller v. Francis,* 269 F.3d 609, 616 (6th Cir. 2001) citing *Hughes v. United States* (C.A.6, 2001), 258 F.3d 453, 458 (6th Cir. 2001); *Goeders v. Hundley*, 59 F.3d 73, 75, (8th Cir. 1995), citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982).

Hendrix has not shown that Prospective Juror No. 12 was actually biased against him. To show bias, he has selectively picked parts of her voir dire answers out of context. He claims Prospective Juror No. 12 said she would vote based on the quantity of witnesses. The Court of Appeals found

> "During voir dire, Prospective Juror No. 12 stated that she would be persuaded by four people who told the same story versus one person who told a different story."

It is not just a quantity of witnesses question – it is not infrequent for the State to have a bevy of foundation witnesses to a far great number than defense. A juror who would always vote for the great number of witnesses in that sense would be biased because the number of witnesses may not correlate at all with the critical nature of their testimony. On the other hand, it is not biased or irrational to says that one would believe four eyewitnesses who told the same story as opposed to

one witness who told a different story, and that is what Prospective Juror No. 12 said she would do.

Not only has Hendrix distorted the meaning of Prospective Juror No. 12's answer about quantity, he has omitted what the Court of Appeals found determinative: her responses to the judge's follow-up questions.

> The prospective juror's clarifying statement showed that she would independently weigh each person's testimony, and that she would not reach a result merely on quantity of evidence. Thus, defense counsel could have made the strategic decision at that point to keep the prospective juror, who would be open to believing his client's story versus the story of the four victims.

*State v. Hendrix, supra*, at ¶ 37.

The Court of Appeals couched its finding on the first prong of *Strickland* in terms of possible defense strategy and Hendrix has cited no authority for the proposition that it would be poor strategy or deficient performance to fail to excuse this juror. Hendrix essentially argues it would have been costless to excuse her because counsel did not need to use this peremptory on another prospective juror. But Hendrix offers no authority for the proposition that it is deficient performance not to use a peremptory in these circumstances. If the judge found defense objections to Prospective Juror No. 12 without merit after follow-up questions, it is likely others, particularly other jurors, likewise found them without merit.

> Moreover, experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. Learned counsel therefore use objections in a tactical manner. In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. See *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005) ("Counsel's failure to object to

> any of the numerous improper statements in the prosecution's closing argument is well outside [professional norms].") (emphasis in original).

*Lundgren v. Mitchell,* 440 F.3d 754, 774-75 (6th Cir. 2006).

Hendrix's Ground Three(a) is without merit and should be dismissed.


### Ground Three (d): Ineffective Assistance of Trial Counsel: Failure to Present Medical, Forensic, and Ballistics Witnesses

In Ground Three (d), Hendrix claims his trial attorneys failure to investigate and then present certain medical, forensic, and ballistics experts prejudiced his ability to support his defense of self-defense.

Hendrix first presented this claim in his Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 (Petition, State Court Record, ECF No. 7, Ex. 18). Assisted by counsel, he phrased the claim as follows:

> Hendrix's 6th Amendment right to effective assistance of counsel was violated where 1) his trial counsel failed to procure and present expert forensic testimony respecting guns and ammunition, gunfire, locations of the gunfire, wounds, and bullet trajectories to support his trial defense and to undermine the State's theories in support of prosecution.[4] See Exhibit A.

*Id.* at PageID 231. Exhibit A is the July 27, 2016, Affidavit of Gary Rini who styles himself as an independent forensic science consultant; he was retained by Hendrix's post-conviction counsel. The trial judge found the claim was barred by *res judicata* and that Rini's Affidavit as to self-defense was not credible. *Id.* at Ex. 21.

On appeal, the First District found the *res judicata* holding was in error. *State v. Hendrix,*

---

[4] The claim as made in post-conviction is thus substantially broader than he one made in habeas: expert testimony from Rini, he asserted in the state court, would not only support self-defense, but undermine the State's theory of the case.

Case No. C-160887 at ¶ 5 (Ohio App. 1ˢᵗ Dist. Sept. 19, 2018)(not reported; copy at State Court Record, ECF No. 24, Ex. 28). But it also affirmed on the other bases cited by the Common Pleas Court which had had a full record to consider. By the time Hendrix appealed, the defense exhibits had been dispersed and the First District was obliged to presume the regularity of lower court proceedings. *Id.* at ¶¶ 6-10.

Because the First District considered this claim on the merits, in order to prevail on this claim Hendrix must show that it is an objectively unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Instead of attempting to do this, Hendrix proceeds as if this Court were reviewing the claim *de novo*. Thus he argues in the Traverse what the evidence presented with the first post-conviction petition proves (ECF No. 79, PageID 2288, et seq.). That argument simply ignores the findings of both the Common Pleas and appellate courts.

Hendrix also filed a second post-conviction petition, attaching substantially more evidence he believed his trial attorney should have gathered and presented. On appeal from denial of this second petition, the First District noted the severe limits provided in Ohio Revised Code § 2953.23 to the jurisdiction of a Common Pleas Court to consider a second or successive post-conviction petition and upheld the denial of jurisdiction by the trial court (Opinion, State Court Record, ECF No. 51, Ex. 67). Regarding Hendrix's self-defense theory, it held:

> ¶ 15 Hendrix also claimed that his trial counsel had been ineffective in failing to investigate and use certain evidence to impeach the credibility of the four attempted-murder victims, who had countered Hendrix's self-defense claim with testimony that he had fired on them first. But this court, in the direct appeal, essentially concluded that the jury had not lost its way in finding that Hendrix, by firing first, had been at fault in creating the situation that led to the exchange of gunfire. *Id.* ¶ 45-46. And the evidence offered in support of that claim cannot be said to so undermine the credibility of those witnesses that its use at trial would have compelled contrary verdicts.

21

*Id.*  To summarize, this amounts to a holding that Hendrix's failure to present the evidence he provided with his second post-conviction petition with the first such petition amounted to a procedural default of his claim of ineffective assistance of trial counsel as to that evidence. Hendrix has presented no argument as to why that default is excused for purposes of habeas corpus. See *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.  This Court cannot consider the evidence submitted with the second post-conviction petition because it was excluded from consideration by the state courts.  See *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Because Hendrix's evidence of ineffective assistance of trial counsel with respect to expert witnesses was either rejected as not credible by the Ohio courts or excluded because of a jurisdictional bar, his Ground Three(d) should be dismissed.  In addition, Hendrix has failed to explain how any of this forensic evidence could have undermined the jury's finding that Hendrix was the aggressor, creating the situation in which the gunfire took place, and negating his theory of self-defense.

**Ground Four:  Insufficiency of the Evidence**

In his Fourth Ground for Relief, Hendrix asserts there was insufficient evidence to convict him of the attempted murders of, and felonious assaults on, Kevin Tye and Christopher White.

Hendrix raised this claim on direct appeal and the First District decided it as follows:

{¶ 43} As to the sufficiency of the evidence adduced to support his convictions for attempted murder against White and Tye, Hendrix argues that he did not shoot at or near Tye or White, and, at most, the evidence showed that Hendrix shot three times in Raines's direction near the firepit and once at Dillon.

{¶ 44} In an attempted-murder prosecution, a defendant's specific intent to kill another can be inferred from the defendant's action in discharging a gun in that person's direction. *State v. Wilson,* 8th Dist. Cuyahoga No. 96098, 2011–Ohio–5653, ¶ 6, citing *State v. Widner,* 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). An examination of the evidence in the light most favorable to the prosecution shows that Tye and White had been outside in the front of Dillon's home when Hendrix fired at least three gunshots towards Dillon's property. Tye testified that he had been out in front of Dillon's home and then moved to the side of Dillon's truck in the driveway once shots were fired. White testified that he had seen Hendrix aim at the firepit in Raines's direction, and fire two shots, and then Hendrix had turned toward White and Dillon, who had been in front of Dillon's house, and had pointed the gun at them. Given the proximity of White and Tye to the shots fired by Hendrix, sufficient evidence of attempted murder exists. *See State v. Bell,* 8th Dist. Cuyahoga No. 87769, 2006–Ohio–6592, ¶ 65 (sufficient evidence of attempted murder existed where the victims had been in the defendant's "line of fire," although they had not actually been hit by any bullets); *State v. Jenks,* 61 Ohio St.3d 259, 612 N.E.2d 492 (1991).

*State v. Hendrix, supra.*

Thus the First District decided Hendrix's sufficiency of the evidence claim on the merits and that decision is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") unless Hendrix shows it is contrary to or an objectively unreasonable application of relevant Supreme Court precedent or based on a determination of the facts that is clearly erroneous, based on the evidence at trial.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order

23

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a

reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

*Jackson*). This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses, but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the AEDPA, two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable

24

> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam). The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Hendrix acknowledges the applicability of the *Jackson* standard by citing its use in *State v.*

*Waddy*, 63 Ohio St.3d 424,430 (1992)(Traverse, ECF No. 79, PageID 2291).

Hendrix bases a considerable portion of his argument on Ground Four on the evidence provided

by forensic consultant Rini and pathologist Miller. *Id.* at PageID 2296-97. He also cites related

evidence from learned treatises.  *Id.* at note. 12.  None of this evidence can be considered in habeas because it was not presented to the state courts.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).

The balance of Hendrix's Ground Four argument is based on trial testimony.

His first citation is to the direct testimony of Kenneth Tye (Traverse, ECF No. 79, PageID 2292, citing Transcript, ECF No. 7-2, PageID 573-75).  Tye recounts the beginning of the confrontation where Hendrix lays hands on Kent Worley to reprimand him for somehow showing 'disrespect´ and the other men present separate the two.  There was heated verbal exchange between Jay Dillon, at whose home the gathering was taking place and Dillon told Hendrix to go home.  Hendrix did so and the gathering around the firepit continued.

A short time later, Hendrix came back out on to the porch of his home.  Tye observed Hendrix's hands and said "I think he's got a gun."  Then he heard a loud sound and saw two flashes.  Hendrix was standing in the middle of the street with his arm extended when the flash happened.  Tye concluded Hendrix was shooting at them and then heard a loud sound behind him.  At that point be went to his own house to retrieve his pistol.  He testified that, as he went into his house, he didn't know what Hendrix was carrying, but he did know that "he was shooting at us."  He told his frantic spouse to do what she thought best about calling 911, but definitely to stay in the house.  He went back outside to assure himself none of his neighbors was hurt and then waited for the police to arrive.

Hendrix concludes this testimony proves

> Hendrix did not shoot at or near Kevin Tye ("Tye"). He could not have been guilty of attempted murder against Tye. Tye himself testified that he walked over to Dillon's front door to tell Dillon he believed Hednrix [sic] had a gun when he saw Hendrix exit his house. (Doc. 7-2, Transcript, PageID#:574-75). That left Raines at the fire pit by himself. (Doc. 7-2, Transcript, PageID#:573.75).

(Traverse, ECF No. 79, PageID 2291-92).

26

Hendrix next cites the direct testimony of Police Officer Kenneth Volz who testified concerning Hendrix's weapon[5] (Traverse, ECF No. 79, PageID 2292). Hendrix concludes we "know for certain that he fired at most four shots." Volz testified that this was a five-round revolver which had four spent rounds and one live round when he recovered it.[6] Hendrix then draws a lengthy set of inferences about where those four shots must have gone.

All of the testimonial evidence on which Hendrix now relies to support these inferences was available to argue to the jury at trial. The jury heard Kenneth Tye summarize his assessment of the situation: "he's shooting at us." Apparently Hendrix's reaction of starting a shoot out over someone's perceived disrespect of someone else was completely unexpected and all happened very fast, creating chaos. Perhaps Hendrix was a bad shot and did not hit what he aimed at. Perhaps precise measurements would have supported, unequivocally, Hendrix's present description almost ten years after the fact of where everyone was standing and when. But the jury had to decide credibility, including the credibility of inferences, as the time of trial. Its determination is entitled to deference, as well as the opinion of the reviewing appellate court. The prosecution, from whose perspective we are obliged to read the evidence, summarized the evidence on Ground Four as follows:

> Here, Hendrix argues that none of the four shots he fired came "remotely close" to Tye or to White. There is no statutory definition for "remotely close" and there is certainly no specific distance from which a bullet must come within a person for the act to amount to attempted murder or the R.C. 2903.1 l(A)(2) form of felonious assault. All of the witnesses testified to the fluidness of the moment when they saw Hendrix raise his arm with a gun and start firing. Not one witness froze in place as Hendrix fired the four shots. And not one of the witnesses was located behind Hendrix as he fired those shots. All four individuals, including Tye and White, were in a position somewhere in the vicinity of Dillon's front and side yards

---

[5] Identified by DNA from Hendrix's blood, taken from the weapon
[6] There was no testimony about whether the gun could easily have been reloaded. The point about reloading is that the inference of four shots, though probable, is not "certain."

and in the potential paths of Hendrix's shots. The fact that the only projectile from Hendrix's gun that was able to be recovered was the one near the tree where Raines took cover does not negate the fact that there were four people located somewhere in front of Hendrix and he fired a total of four shots. Based on the record, all of Hendrix's convictions are supported by sufficient evidence.

(State's Brief on Appeal, State Court Record, ECF No. 7, Ex. 11, PageID 141). Add to this the jury's knowledge that Hendrix had been convicted many times of serious felonies, thereby undermining his credibility and the jury could well have determined to accept the State's version of the events.

Hendrix's Fourth Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 5, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a

memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge