## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

D'JANGO HENDRIX,

                 Petitioner,           :    Case No. 1:17-cv-623

     - vs -                         District Judge Douglas R. Cole
                                   Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
 Institution,

                              :

            Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner D'Jango Hendrix under 28 U.S.C. § 2254, is before the Court on Petitioner's Objections (ECF No. 105) to the Magistrate Judge's Report and Recommendations which recommend dismissal of the Petition with prejudice (the "Report," ECF No. 88). District Judge Cole has recommitted the case under Fed.R.Civ.P. 72(b) for further analysis in light of the Objections (Order, ECF No. 106).

**Ground One:  Improper Impeachment with Prior Convictions**

In his First Ground for Relief, Hendrix asserts the trial judge improperly allowed him to be impeached with his prior felony convictions. The Report recommended dismissing this claim for failure to state a claim cognizable in habeas corpus, namely a violation of the United States

1

Constitution (Report, ECF No. 88, PageID 2395).  Alternatively, assuming Hendrix intended to assert admitting these convictions was a denial of due process, the Report recommended dismissal because no clearly established U.S. Supreme Court precedent was unreasonably applied by the Ohio First District Court of Appeals in deciding this claim.  *Id.* at PageID 2396.  Hendrix objects (ECF No. 105, PageID 2515-21).

The litigation context of the trial judge's ruling is crucial.  In 2014, a Hamilton County Grand Jury indicted Hendrix on four counts of attempted murder with firearm specifications, four counts of felonious assault, and two counts of having weapons while under a disability (Indictment, State Court Record, ECF No. 7, Ex. 1).  The disqualifying disability pleaded as to Count Nine was prior conviction of "a felony offense of violence, to wit: burglary, in the Butler County, Ohio, Court of Common Pleas, Case No. CR2005030345, on January 23, 2006 and/or intimidation in the Butler County, Ohio, Court of Common Pleas, Case No. CR2005030435, on November 17, 2005." *Id.* at PageID 48.

The disqualifying disability pleaded as to Count Ten was prior conviction of a "felony offense involving the illegal possession of, sale of, use of, administration of, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that if committed by an adult, would have been a felony offense involving the illegal possession of, use of, sale of administration of, distribution, or trafficking in a drug of abuse, to wit: trafficking in cocaine, in the Butler County, Ohio, Court Of Common Pleas, Case No.___ on May 25, 2001." *Id.* at PageID 48-49.

These prior felony convictions – burglary, intimidation, and trafficking in cocaine -- are elements of the offenses of having a weapon under disability as charged in Counts Nine and Ten

2

respectively and thus had to be proved by the State to the jury beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). To avoid having persons associated with those prior cases come before the jury in this case and identify Hendrix as the person convicted in those prior cases, Hendrix himself moved to stipulate to those prior convictions (Motion to Stipulate, State Court Record, ECF No. 7, Ex. 3). Indeed he argued it would be an abuse of discretion for the trial judge to fail to accept that stipulation. *Id.* at PageID 56, citing *State v. Creech*, 150 Ohio St. 3d 540 ¶ 29 (2016) and *Old Chief v. United States*, 519 U.S. 172 (1997)[1].

Hendrix tried the case to a jury which found him guilty on all ten counts (Verdicts, State Court Record, ECF No. 7, Ex. 4). It is not uncommon for defendants to waive their jury trial right on weapons under disability charges and try those charge to the judge alone, in which case the jury would not have heard about the prior convictions at all. Hendrix did not take that approach, but tried the entire case to the jury.

Moreover, Hendrix took the stand to defend himself, to present his theory that he acted in self-defense. Under the Ohio Rules of Evidence, a criminal defendant's prior felony convictions are, in most instances, not admissible against him unless he becomes a witness[2]. On the other hand, the prior felony convictions of any witness, whether or not a defendant, are admissible "for the purpose of attacking the credibility of [the] witness" at the discretion of the trial judge if they occurred within the last ten years. Ohio R. Evid. 609.

Hendrix complains that the prior convictions inquired into on cross-examination went far beyond the prior convictions which had been stipulated to.

---

[1] Hendrix acknowledges that *Old Chief* was applying federal law. Critically, that was federal "common law," interpreting the Federal Rules of Evidence and not the federal Constitution.

[2] A criminal defendant of course has the right under the Fifth Amendment not to take the stand and his failure to do so may not be commented on by the prosecutor.

> The State went over three separate convictions for trafficking in cocaine, a burglary conviction, additional convictions for having weapons under disability, harassment by inmate convictions, illegal possession of a firearm in a liquor establishment, a conviction for intimidation, and finally, discharge of a firearm near a premises. (Doc. 7-4, Transcript, PageID 914-916). The real purpose behind the State's questioning could not be clearer: complete character assassination.

(Objections, ECF No. 105, PageID 2516).  Because Hendrix had chosen to take the stand, the State was entitled to attack his character for truthfulness, as it could do with any witness, and the law regards prior felony convictions as relevant on that point.  The State could not lawfully attack Hendrix's general character by showing, for example, marital infidelity or lack of church attendance, which are not relevant and could be highly prejudicial.  But prior felony convictions are fair game on the issue of witness credibility.

At his or her discretion, a trial judge may exclude prior convictions if the danger of prejudice outweighs the probative value of the prior convictions.  Hendrix claims the trial judge abused his discretion by not excluding prior convictions beyond those stipulated to on that basis. *Id.* at PageID 2517.  However, abuse of discretion is not a denial of due process or any other federal constitutional guarantee.  *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  Thus this Court cannot review an Ohio trial judge's exercise of discretion.

Hendrix also claims admission of these prior convictions denied him due process and a fair trial in violation of the Fourteenth Amendment, relying on *Old Chief*.  *Old Chief* is not a constitutional decision, but rather an application of federal evidence law.  The burden on a habeas

4

petitioner seeking to overturn a state court merits decision on a federal constitutional claim is to show that decision is contrary to or an objectively unreasonable application of clearly established U.S. Supreme Court constitutional precedent. Hendrix has not done so. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire.* 502 U.S. 62 (1991).

Petitioner's Objections as to Ground One are without merit and should be overruled.


**Ground Two: Challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).**


In his Second Ground for Relief, Hendrix claims the trial court violated his constitutional rights under the Equal Protection Clause by seating a juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), by allowing a race-based peremptory challenge by the State. Hendrix had presented this claim on direct appeal and the First District rejected it, concluding that the trial judge's finding that the prosecutor's reasons for the challenge were not pretextual was not a clearly erroneous finding. The reason given was that the prospective juror's husband had been investigated for telephone harassment by the same police department which brought this case. Because the First District had decided this claim on the merits, Hendrix's burden under 28 U.S.C. § 2254(d)(2) was to show by clear and convincing evidence that that decision was in error, based on the facts on the record. The Report concluded Hendrix had not met that burden by merely labeling the prosecutor's reason "clearly pretextual." (ECF No. 88, PageID 2400).

Hendrix objects. He does not claim the trial judge did not follow the analytical steps required by *Batson*. He admits that the demeanor of the prosecutor is important in assessing the prosecutor's credibility (Objections, ECF No. 105, PageID 2525-26, citing *Wainwright v. Witt,* 469 U.S. 412, 428 (1985). But only the trial judge observes that demeanor and Hendrix points to no peculiarity in the prosecutor's demeanor which could have led to doubting his credibility. He notes that failure to exclude prospective jurors of a different race from the challenged juror can support an inference of discrimination if they have the same characteristic on which the State claims to base its peremptory challenge, but he points to no such instance in this case.

Hendrix objects "there is no evidence that the trial court evaluated any of the State's proffered reasons for striking Prospective Juror Number **1.** The court simply stated it found the reasons to be race neutral." (Objections, ECF No. 105, PageID 2528). But none of the post-*Batson* jurisprudence requires a trial judge to explain on the record in the midst of trial why he or she is overruling an objection. Hendrix does not offer any analysis of why the prosecution of Prospective Juror Number 1's husband by the same police agency involved in this case is not race neutral and the First District found that alone was sufficient justification for the peremptory challenge. Enforcement of *Batson* is an important facet of racial justice in our constitutional system, but *Batson* does not change the fundamental nature of a peremptory challenge. The burden remains on a habeas petitioner to show, by clear and convincing evidence, that the state court finding of no racial discrimination was erroneous. Hendrix has not met that burden and his objections as to Ground Two should be overruled.

**Ground Three (b): Ineffective Assistance of Trial Counsel: Failure to Excuse Biased Juror**

In Ground Three (b), Hendrix claims he received ineffective assistance of trial counsel when his trial attorney failed to use a peremptory challenge to excuse a biased juror.

There were five eyewitnesses to the offenses with which Hendrix was charged: Hendrix and the four victims. The juror in question was Prospective Juror Number 12. During voir dire she was asked, without knowing the relevant context, if she would believe four witnesses who told the same story as opposed to one witness who told a different story. When she said yes, defense counsel challenged her for cause. Rather than accept her answer at face value, the trial judge inquired further and Prospective Juror 12 clarified that she "would weigh each witness's testimony independently." *State v. Hendrix*, 2016-Ohio-2697 ¶ 36 (Ohio App. 1st Dist. April 27, 2016). She was then seated as a trial juror and defense counsel did not later use a peremptory challenge to remove her.

Hendrix claims it was ineffective assistance of trial counsel to fail to challenge her peremptorily. The First District decided this claim on the merits, so Hendrix's burden is to show this was an objectively unreasonable decision. It concluded that counsel could have made a strategic decision not to challenge her because the judge had found no bias. *Id.* at ¶ 37. The Report found this deference to counsel's professional judgment to be a reasonable application of the governing standard on ineffective assistance of trial counsel, *Strickland v. Washington,* 466 U.S. 668 (1984).

Hendrix concedes that he must show Prospective Juror Number 12 was actually biased against him, but to do so he selectively quotes her voir dire answers. The Report concluded he

had not met his burden of proving actual bias. Hendrix objects. He essentially repeats his prior argument in the Traverse that it would have been costless to excuse her because no other peremptory challenges had been used. However, he does not give the context of the decision in terms of a possible need to use peremptory challenges to other jurors or whether counsel knew who would replace her. The costlessness of using a peremptory on Prospective Juror Number 12 does not prove she was actually biased.

Hendrix objects that "[w]ithout an evidentiary hearing, this Court cannot know trial counsel['s reasoning in seating a biased juror." (ECF No. 105, PageID 2530). It is true the record contains no explanation from trial counsel as to why he did not peremptorily challenge Prospective Juror Number 12. But when a constitutional claim depends on evidence outside the direct appeal record, Ohio law provides for a petition for post-conviction relief in Ohio Revised Code § 2953.21. Hendrix filed such a petition with the assistance of different and experienced criminal defense counsel, but did not raise this issue or seek to introduce any evidence on this point. The state court record is thus closed on this issue and this Court cannot add to it by holding an evidentiary hearing. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

In the absence of any contrary evidence, the First District's attribution of plausible strategic reasons for not making the peremptory challenge is entitled to deference under AEDPA and *Strickland*. Hendrix's objections on Ground 3(b) should be overruled.

**Ground Three (d): Ineffective Assistance of Trial Counsel: Failure to Present Medical, Forensic, and Ballistics Witnesses**

In Ground Three (d), Hendrix claims his trial attorney's failure to investigate and then

present certain medical, forensic, and ballistics experts prejudiced his ability to support his defense of self-defense.

Hendrix first presented this claim in his petition for post-conviction relief which was rejected on the merits by both the trial court and the First District[3]. The trial court found the supporting evidence to be not credible. Hendrix filed a second post-conviction petition presenting additional evidence which was not considered because of Ohio's bar on second post-conviction petitions.

The Report recommends that this ground for relief be dismissed based on the credibility finding of the state courts or be held to be procedurally defaulted, based on the second or successive jurisdictional bar (ECF No. 88, PageID 2408). It also concludes: "In addition, Hendrix has failed to explain how any of this forensic evidence could have undermined the jury's finding that Hendrix was the aggressor, creating the situation in which the gunfire took place, and negating his theory of self-defense." *Id.*

Hendrix objects first of all that "The Report and Recommendations incorrectly concludes Hendrix has presented no argument as to why that default is excused for purposes of habeas corpus." (Objections, ECF No. 105, PageID 2534, citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). But then, instead of pointing to the location where he supposedly made the default excuse argument in prior filings, Hendrix proceeds to make that argument for the first time in his Objections at PageID 2535-51. He then turns to an alternative actual innocence gateway argument to excuse his procedural default. *Id.* at PageID 2552-57. Next he argues the First District Court of Appeals did not decide this ineffective assistance of trial counsel claim on the merits. *Id.* at

---

[3] The trial court also found the claim barred by *res judicata*, but the First District disagreed.

PageID 2557-61. Then he turns back to the merits of his ineffective assistance of trial counsel claim premised on failure to submit forensic evidence. *Id.* at PageID 2561-63. Hendrix then "objects to the incorrect statement that he has failed to explain how any of this forensic evidence could have undermined the jury's finding that Hendrix was the aggressor." *Id.* at PageID 2563-65. He asserts he is entitled to factual development in this Court of disputed factual matters. *Id.* at PageID 2565-68. Hendrix thus spends thirty-five pages of his sixty-page Objections introducing new arguments rather than objecting to the analysis actually made in the Report.

The Court is authorized to treat as waived those arguments raised for the first time in objections.

> [W]hile the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. See *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater,* 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); see also *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302-03 (S.D. Ill. 1990).

*Murr v. United States,* 200 F.3d 895, 902 (6th Cir. 2000). District Judge Rose's Recommittal Order does not preclude his deeming waived arguments presented for the first time in the Objections and he may do so on his eventual review.

**Hendrix's New Arguments Made in the Objections**

However, in the interest of thoroughness and fulfilling the recommittal mandate, this Supplemental Report will analyze the new arguments Hendrix has made. They are not persuasive

10

for the following reasons.

### Ineffective Assistance of Post-Conviction Counsel as Excusing Cause

Hendrix first argues his procedural default in not presenting his new forensic evidence ineffective assistance of trial counsel claim in his first post-conviction petition is excused by the ineffective assistance he received from his post-conviction counsel, Christopher Pagan (Objections, ECF No. 105, PageID 2536, *et seq*.) He relies on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and the recognition by the Sixth Circuit in *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270 (6th Cir. 2019), that the *Martinez/Trevino* exception applies in Ohio where the ineffective assistance of trial counsel claim could not be properly raised on direct appeal for lack of a sufficient record.

Hendrix could not have presented his ineffective assistance of trial counsel claim on direct appeal because it relied on the Affidavit of Gary A. Rini (Ex. A. to Post-conviction Petition, State Court Record, Ex. 18, PageID 234 *et seq*.) and the Supplemental Report of Rini. *Id.* at Ex. 19. Neither of these documents was part of the direct appeal record, so they had to be presented by way of a post-conviction petition under Ohio Revised Code § 2953.21[4].

Unlike the petitioner in *White*, however, Hendrix had counsel for his initial post-conviction petition – Christopher Pagan – and Pagan was the lawyer who obtained the reports from Rini and then presented them in a timely post-conviction petition in support of the claim Hendrix makes here, to wit, that his trial attorney was ineffective for not presenting "expert forensic testimony

---

[4] Neither of the documents existed at the time of trial.

respecting guns and ammunition, gunfire, locations of the gunfire, wounds, and bullet trajectories to support his trial defense and to undermine the State's theories in support of prosecution. See Exhibit A [the Rini Report]."

According to the Objections, Pagan was retained for the post-conviction phase of the case on June 23, 2016, at a meeting with Hendrix at London Correctional in which Attorney John Forg also participated.  Forg was Hendrix's trial attorney whom he was about to accuse of providing ineffective assistance.  According to Hendrix, Forg was there because he had worked in Pagan's law office up "until the summer of 2010."  That is a complete *non sequitur*.  By allowing Forg to be present, Hendrix arguably waived attorney-client privilege for the conversation between Hendrix and Pagan when they were both about to accuse Forg of ineffective assistance[5].  Why would Hendrix do that?  Why would Pagan allow him to do that?

The next step was for Pagan to file the post-conviction petition

> After filing Hendrix post-conviction petition, Pagan contacted Thompson[6] requesting any evidence that he might still be in possession of that could assist expert Rini in his expert analysis of Hendrix case. Pagan stated to Thompson via letter dated July 28, 2016, **"If there is a disc of exhibits, reports, and photographs, I would be happy to come get it."** (ECF No.___, PageID ___)[Emphasis in original.]. But Pagan did not obtain the evidence Thompson was still in possession of. Pagan failed to conduct a reasonable investigation of critical evidence, as evidenced by Hendrix having to obtain the medical evidence, and procure Dr. Miller to interpret his CT scans-x-ray's. thus Pagan neglected a whole field of evidence.

(Objections, ECF No. 105, PageID 2538).  The letter from Pagan to Thompson is cited to a blank record reference.  The letter in question actually appears at ECF No. 77, PageID 2229[7], and recites

---

[5] And arguably of legal malpractice.
[6] Joshua Thompson had been Hendrix's direct appeal attorney.
[7] This letter is an attachment to an amended petition which was stricken because filed without Court permission under

Gary Rini _has been hired to offer a forensic opinion on the shots in this case. I write to obtain the following information for that purpose:

1. Detective Ken Volz's report with a focus on the description and photographs of bullets, casings, the locations for the same, wounds, and bullet holes. This would include photographic exhibits 28, 33-41, 49-50, and 53-56.

2. I have already supplied Mr. Rini with a transcript of Detective Volz's testimony, which goes from approximately pp. 385 to 450.

3. The State's ballistic expert John Reile's report.

4. I have already supplied Mr. Rini with a transcript of Heile's testimony, which goes from approximately pp. 450 to 515.

5. Justice Center nurse Brian Edmunds' report.

6. I have already supplied Mr. Rini with a transcript of Edmunds' testimony, which goes from approximately pp. 575 to 600.

I believe that these are the only sources of independent evidence regarding the gun issues.

Hendrix offers no proof to show that Thompson was still in possession of additional evidence.

Hendrix asserts, however,

The evidence Pagan failed to obtain from Thompson was as follows:
• Disc of photographs from the scene taken by police
• A disc of victim/suspect interviews (including 5 men other than Hendrix)
• A disc of Hendrix's interview at U.C. Hospital
• Three discs with 911 calls
• Disc labeled "witness interview"
• A disc full of Hendrix's medical records

(Objections, ECF No. 105, PageID 2539). As evidence that Thompson possessed this information,

Hendrix gives the same record reference he gave for Pagan's July 28, 2016, letter – ECF No. 77,

---

Fed.R.Civ.P. 15.

PageID 2229-30.  The referenced list of documents does not appear in that letter.

What happened next?  "Once Hendrix's obtained his medical records[8], he procured Forensic Pathologist Frank P. Miller ("Dr. Miller"), to review and offer an expert opinion, in relation to the files containing Hendrix's medical records, obtained from Thompson."  Objections, ECF No. 105, PageID 2541.  Hendrix refers to a report from Dr. Miller date **June 12, 2023**, less than one month ago, more than a month after the Report was filed, and almost seven years after Pagan was retained.

The gravamen of Hendrix's objections on this claim for relief is that Pagan could have obtained a similar completely exonerating forensic report seven years ago if he had just provided sufficiently zealous representation.

As Hendrix argues, the expert whom Pagan presented, Gary Rini, was qualified to render an opinion on the forensic issues Hendrix presents.  The trial court judge, who had heard the evidence and had the trial record available to him, found Rini's Affidavit claiming Hendrix acted in self-defense to be not credible (Entry, State Court Record, ECF No. 7, PageID 283).  His dismissal of the post-conviction petition on that basis was affirmed. *Id.* at Ex. 28 Although summary, the state court decisions are plainly on the merits and therefore entitled to deference under the AEDPA.  Hendrix has provided no persuasive argument as to why that finding by the Ohio courts is an unreasonable determination of the facts, given the evidence presented.

Finally, Hendrix's ineffective assistance of trial counsel by failure to present forensic evidence of the quantity and quality he now presents has never been presented to the Ohio courts.

---

[8] Hendrix admits he did not ask Thompson directly for these files until 2018 (Objections, ECF No. 105, PageID 2542). He does not give a date, but any date in 2018 would have been after expiration of the one-year statute of limitations on post-conviction petitions

14

A state prisoner seeking federal habeas corpus relief must first exhaust the remedies available to him in the state courts. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Exhaustion in Ohio may require filing a motion for a new trial or a second post-conviction petition. *Cunningham v. Hudson,* 756 F.3d 477, 482 (6th Cir. 2014). Although Hendrix sought unsuccessfully to present a second post-conviction petition, he has not attempted to obtain relief by way of a delayed motion for new trial. The Supreme Court of Ohio has recently cleared away some of the procedural hurdles to having new evidence considered in such a proceeding. *State v. Bethel*, 167 Ohio St. 3d 362 (2022). In the absence of such a new trial motion, this Ground for Relief should be dismissed for lack of exhaustion if it is not dismissed on the merits.

### Actual Innocence as Excusing Cause

Hendrix also argues for the first time in his Objections that his procedural default of his ineffective assistance of trial counsel claim is excused by his actual innocence (Objections, ECF No. 105, PageID 2552, *et seq.*).

While actual innocence itself is not a ground for habeas corpus relief, it can, if satisfactorily established, excuse procedural default and failure to file within the statute of limitations. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.

15

S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

\* \* \*

[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

In *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [*v. Delo*] actual innocence exception." The *Souter* court also held:

[I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

16

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Hendrix focuses on that part of the State's case which asserted Hendrix was shot by Jay Dillon with Dillon's .45 caliber weapon. Hendrix's evidence of actual innocence is medical records and Dr. Miller's interpretation of them which dispute that Hendrix's wound was caused by a large-caliber bullet.

While Hendrix's new evidence[9] sufficiently calls into question one inference on which the State relied – that it was Jay Dillon who shot Hendrix – it does not, when considered together with the other evidence, demonstrate Hendrix's actual innocence. Hendrix has claimed throughout the case that he acted in self-defense in shooting at the four victims. Under Ohio law, a defendant who creates the situation in which deadly force is used cannot rely on self-defense as an argument. *State v. Jackson*, 22 Ohio St.3d 281, 283 (1986); *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. Even taking Hendrix's trial testimony at face value, there was sufficient evidence for the jury to find he created the situation. He came on the scene after the Christmas tree burning party had already started. He exchanged words with Worley, got pushed and "disrespected," and had his glasses knocked off, then went into his house and did what? He retrieved a gun and went back into the situation where the shooting occurred. He claimed it was his wife's gun and he took it for her protection; he was allegedly headed to his truck to go to a bowling alley when he was fired on. A jury could readily have disbelieved this tale and instead believed Hendrix went back out to get some respect from the others, respect which would be given to a man who was armed.

Contrast the successful actual innocence claim in *House v. Bell,* 547 U.S. 518 (2006).

---

[9] Whether newly discovered or just newly presented. *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012).

House, a recently released convicted felon, was proved to be in the vicinity of the victim who had been raped and then murdered; her blood was found on the pants he was wearing that night. His new evidence was proof that the pants and a vial of her blood were shipped together to a testing facility and the vial had broken in transit. This new evidence undermined a critical element of the State's case – identification of House as the perpetrator. Without that identification, House could not have been found guilty. But in this case, given the number of guns and shots fired, proof that it was not a .45 caliber bullet that struck Hendrix is not conclusive. Hendrix has not demonstrated his actual innocence sufficiently to excuse his procedural default.

### The Ohio courts did not decide this claim on the merits

In the midst of his new arguments attempting to excuse procedural default of this ineffective assistance of trial counsel claim, Hendrix also claims the Ohio courts did not decide it on the merits (Objections, ECF No. 105, PageID 2557-61). Were that so, this Court could review this claim *de novo*[10].

As noted above, the trial court's conclusion that the Rini Report is not credible is summary. Hendrix asserts that is not a decision on the merits because Ohio law requires findings of fact and conclusions of law in deciding a petition for post-conviction relief. *Id.* at PageID 2558. This argument is unavailing for two reasons. First of all, the findings of fact/conclusions of law requirement is a matter of Ohio law. Hendrix cites only Ohio law in support and not any federal case law on the point. Second, Hendrix procedurally defaulted this claim by not raising it on

---

[10] This is not, therefore, a new argument to excuse procedural default, but a new argument, made for the first time in the Objections, that this Court need not defer to the state court decisions under 28 U.S.C. § 2254(d).

appeal from denial of the first post-conviction petition (See Opinion, *State v. Hendrix,* State Court Record, ECF No. 24, Ex. 28).

Hendrix claims he properly sought relief under Ohio R. Civ. P. 60(b)(5) in conjunction with his second post-conviction petition. Both state courts held against him on this point and he relies on Ohio law to attempt to show they were in error. However, this Court is bound by state court determinations on state law. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")*, Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

## Ground Four: Insufficiency of the Evidence

In his Fourth Ground for Relief, Hendrix asserts there was insufficient evidence to convict him of the attempted murders of, and felonious assaults on, Kevin Tye and Christopher White. The Report recommends dismissal of this Ground on the merits by virtue of deference to its rejection by the First District Court of Appeals.

Hendrix objects first that that the State did not properly prove this claim was procedurally defaulted (Objections, ECF No. 105, PageID 2569, *et seq.*). This objection completely misses the point: the Report did not find this claim procedurally defaulted at all.

The Report's concludes that this Court cannot consider "the evidence provided by forensic consultant Rini and pathologist Miller" and "related evidence from learned treatises" cited by Hendrix

19

"because it was not presented to the state courts." (Report, ECF No. 88, at PageID 2411-12, citing *Cullen v. Pinholster*, 563 U.S. 170 (2011). Hendrix objects that *Martinez*, *Trevino*, and *Schlup* hold that this evidence can be considered in habeas (Objections, ECF No. 105, PageID 2571-723).

This objection requires explaining an important distinction. The Report does not find a procedural default of the Fourth Ground for Relief. Instead, it finds Hendrix raised that claim, which arises under *Jackson v. Virginia,* 443 U.S. 307 (1979), on direct appeal and the First District decided that claim against him on the basis of the evidence presented at trial. In deciding whether that court's decision was entitled to deference under AEDPA, this Court has to decide whether the First District's conclusion was a reasonable determination of the facts based on the evidence already before that Court. 28 U.S.C. § 2254(d)(2). Rini's and Miller's reports and the learned treatise citations Hendrix offers were not in the state court record when the First District decided this claim on the merits. That is why this Court cannot consider them in determining whether the First District decision is entitled to deference. We can and have considered those items in determining whether Hendrix qualifies for the actual innocence gateway.

The Report quotes the First District's summary of the evidence supporting the convictions for attempted murder of White and Tye (ECF No. 88, PageID 2409). The Report concluded the decision was entitled to AEDPA deference because all of the evidence at trial about where Tye and White were positioned when Hendrix fired his weapon was before the trial jury which chose to believe the State's version rather than Hendrix's (Report, ECF No. 88, PageID 2413-14). Hendrix's version depended on his own self-interested testimony which had been properly impeached with his prior felony convictions. It is the jury which must resolve credibility questions. As explained by the First District, they did so in this case in a reasonable way which is therefore entitled to deference. Ground Four should be dismissed on the merits.

**Conclusion**

Based on the foregoing analysis and that in the original Report, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 6, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge

21
